## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PAUL TROIA, individually and on behalf of all
others similarly situated,

    Plaintiffs,

v.

VENTURE GLOBAL ENGINEERING, LLC,

    Defendant

Case No. 2:20-cv-11197

Honorable Bernard A. Friedman
Mag. Judge R. Steven Whalen

---

Andrew Shamis
SHAMIS & GENTILE, P.A.
*Attorneys for Plaintiff and the Proposed Class*
14 NE 1ˢᵗ Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

Gary M. Klinger
IL Bar No. 6303726
MASON LIETZ & KLINGER, LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
(312) 283-3814
gklinger@masonllp.com

Rachel Dapeer
DAPEER LAW, P.A.
Florida Bar No. 108039
300 S. Biscayne Blvd., #2704
Miami, FL 33131
(305) 610-5223
rachel@dapeer.com

JACKSON LEWIS, P.C.
Blaine A. Veldhuis (P78840)
*Attorneys for Defendant*
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
Blaine.Veldhuis@jacksonlewis.com

JACKSON LEWIS, P.C.
Charles F. Seemann III (LA - #23933)
*Attorneys for Defendant*
650 Poydras Street, Suite 1900
New Orleans, LA 70130
(504) 208-1755
Charles.Seemann@jacksonlewis.com

Scott Edelsberg
EDELSBERG LAW, PA
Florida Bar No. 0100537
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
(305) 975-3320
scott@edelsberglaw.com

_____

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER TO FED. R. CIV. P. 12(b)(1)

Defendant Venture Global Engineering, LLC, through its undersigned counsel, moves to dismiss the claims asserted in Plaintiff Paul Troia's Complaint under FED. R. CIV. P. 12(b)(1).  As required by Local Rule 7.1, Defendant's counsel conferred with Plaintiff's counsel on August 11, 2020 regarding the basis for Defendant's motion and the relief requested. Concurrence in the relief requested was not obtained. Accordingly, Defendant respectfully requests that this Court grant its motion and enter an order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,
JACKSON LEWIS, P.C.

By:  */s/ Blaine A. Veldhuis* _____
        Blaine A. Veldhuis (P78840)
        *Attorneys for Defendant*
        2000 Town Center, Suite 1650
        Southfield, MI  48075
        (248) 936-1900
        Blaine.Veldhuis@jacksonlewis.com

- 2 -

JACKSON LEWIS, P.C.
Charles F. Seemann III (LA - #23933)
*Attorneys for Defendant*
650 Poydras Street, Suite 1900
New Orleans, LA 70130
(504) 208-1755
Charles.Seemann@jacksonlewis.com

Dated:  August 17, 2020

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PAUL TROIA, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

VENTURE GLOBAL ENGINEERING, LLC,

    Defendant

Case No. 2:20-cv-11197

Honorable Bernard A. Friedman Mag. Judge R. Steven Whalen

---

Andrew Shamis
SHAMIS & GENTILE, P.A.
*Attorneys for Plaintiff and the Proposed Class*
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

Gary M. Klinger
IL Bar No. 6303726
MASON LIETZ & KLINGER, LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60630
(312) 283-3814
gklinger@masonllp.com

Rachel Dapeer
DAPEER LAW, P.A.
Florida Bar No. 108039
300 S. Biscayne Blvd., #2704
Miami, FL 33131
(305) 610-5223
rachel@dapeer.com

JACKSON LEWIS, P.C.
Blaine A. Veldhuis (P78840)
*Attorneys for Defendant*
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 936-1900
Blaine.Veldhuis@jacksonlewis.com

JACKSON LEWIS, P.C.
Charles F. Seemann III (LA - #23933)
*Attorneys for Defendant*
650 Poydras Street, Suite 1900
New Orleans, LA 70130
(504) 208-1755
Charles.Seemann@jacksonlewis.com

Scott Edelsberg
EDELSBERG LAW, PA
Florida Bar No. 0100537
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
(305) 975-3320
scott@edelsberglaw.com

_____

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P 12(b)(1)

# TABLE OF CONTENTS

INDEX OF MOST APPROPRIATE AUTHORITY ............................................... ii

STATEMENT OF ISSUES PRESENTED .............................................................. iv

I.       INTRODUCTION ...................................................................................... 1

II.      STATEMENT OF NECESSARY FACTS ................................................. 2

III.     LEGAL ARGUMENT ............................................................................. 6

   A.   Federal Jurisdiction Under Article III ................................................. 6

   B.   Plaintiff Cannot Establish Article III Standing For His Alleged Injuries..... 7

    1. Threshold Elements For Standing Under Article III .................................. 8

    2. Plaintiff Cannot Establish Article III Standing for His Informational Injury or Loss of Coverage Claims .......................................................... 10

       a)   Plaintiff Cannot Show A Concrete and Particularized Injury .............. 11

       b)   Plaintiff Cannot Show A Causal Connection Between the Alleged Technical Violation and His Alleged Injuries ........................................... 13

       c)   There is No Legal Redressability For Plaintiff's Alleged Injury ......... 13

   C.   Plaintiff's Claims Were Not Ripe and Are Now Moot .............................. 14

IV.    CONCLUSION ...................................................................................... 16

i

## INDEX OF MOST APPROPRIATE AUTHORITY

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...................................... 2, 8, 9,11,12
*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020)......................................... 9, 10, 13

## INDEX OF AUTHORITY

**Cases**

*431 E. Historic Saint Andrew's Hall, Inc. v. Saint Andrew's Soc'y*, 1989 U.S. Dist. LEXIS 17831, at *8 (E.D. Mich. May 1, 1989) .................................12
*Abbott v. Michigan,* 474 F.3d 324 (6th Cir.2007)......................................................6
*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)...................................................5
*Associated Gen. Contrs. Of Am. v. City of Columbus,* 147 F. Supp. 2d 864, 868-870 (S.D. Ohio 2001)................................................................................14
*Ballard v. Vulcan Materials Co., 978 F. Supp. 751,* 759 (W.D. Tenn. 1997).. 13, 15
*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)..................................10
*Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)...............10
*Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020)......................................................9
*City Communications, Inc. v. Detroit*, 888 F.2d 1081, 1086 (6th Cir. 1989)......8, 14
*City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) .............................................6
*Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001)..............................................................................14
*Genesis HealthCare Corp. v. Symcryk,* 569 U.S. 66, 71 (2013) .............................15
*Hanysh v. Buckeye Extrusion Dies, Inc.*, 2012 U.S. Dist. LEXIS 125628 (N.D. Ohio Sept. 5, 2012) ................................................................................15
*Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901 (W.D. Mich. Sept. 9, 2002) ........................................................................................15
*Huff v. Telecheck Servs.,* 923 F.3d 458 (6th Cir. 2019)............................................9
*Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) ...6
*League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) ....................................................................................................10
*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990) ...................................11
*Lincoln General Hosp. v. Nebraska State Educ. Ass'n Health Care Program Plan*, 792 F. Supp. 67 (D. Neb. 1991)................................................................13
*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)...................................8
*McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004).....................15

*Mercado-Garcia v. Ponce Federal Bank*, 779 F. Supp. 620, 631 (D.P.R. 1991) ...15
*Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008) ...............6
*Nagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018)...................................9
*Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)..........6
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................... 2, 8, 9 ,11, 12
*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020).........................................9, 10, 13

## Statutes

26 U.S.C. § 1162(2) ...........................................................................................11
26 U.S.C. § 4980B(g)(4) ....................................................................................11
28 U.S.C. §1927 ................................................................................................17
29 U.S.C. § 1162(2)(A)(i) ...................................................................................3
29 U.S.C. § 1163(2) ...........................................................................................2
29 U.S.C. § 1165 ................................................................................................3
29 U.S.C. § 1166(a) ...........................................................................................2
29 U.S.C. §1132(g) ...........................................................................................17

## Rules

26 C.F.R. § 54.4980B-7 ......................................................................................3

iii

## STATEMENT OF ISSUES PRESENTED

I.   Should this Court dismiss Plaintiff's Complaint because he lacks a justiciable injury, as required by Article III of the Constitution of the United States?

Defendant states: "Yes."
Plaintiff States:

II.  Should this Court dismiss Plaintiff's claims when they were not ripe when Plaintiff filed his Complaint because Plaintiff was offered COBRA coverage and the claims are now moot after Plaintiff knowingly rejected the COBRA coverage?

Defendant states: "Yes."
Plaintiff States:

## I.    <u>INTRODUCTION</u>

This case represents a calculated attempt to parlay an isolated, technical violation of a statutory notice provision into exaggerated class-action claims. These types of lawsuits under COBRA,[1] designed to exploit technical errors, serve no legitimate purpose and drive up the cost of sponsoring health plans. The increase in plan administration costs ultimately harms the plan beneficiaries that COBRA was designed to benefit. Indeed, the driving motivation behind these claims seems to be attorney fees.

Although Plaintiff correctly asserts that he did not receive a timely COBRA notice, (the result of a clerical error) his Complaint completely omits reference to Defendant's curative measures, which were promptly undertaken in the precise manner contemplated by the relevant statute. Indeed, Defendant offered Plaintiff a retroactive opportunity to elect COBRA coverage, including reimbursement of all out-of-pocket medical expenses. Remarkably, Plaintiff's window to elect retroactive COBRA coverage remained open when this lawsuit was filed and remained open for weeks afterward. Nevertheless, Plaintiff declined the opportunity to elect COBRA coverage, opting instead for this litigation.

---

[1] Formerly named the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), COBRA is part of the Employee Retirement Income Security Act ("ERISA")

As explained below, Plaintiff does not, and cannot, present a justiciable "case or controversy," required under Article III of the Constitution of the United States of America. First, Plaintiff cannot establish an Article III injury sufficient to support his claims under these circumstances. In this regard, Plaintiff's claim for statutory penalties must also be dismissed under a straightforward application of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Second, Plaintiff's claims were not ripe for adjudication at the time his Complaint was filed because Plaintiff's window to elect COBRA continuation coverage was still open and the offered coverage was retroactive to his termination. Third, Plaintiff's claims became moot after Plaintiff declined the curative offer of COBRA continuation coverage. For these reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

## II.   STATEMENT OF NECESSARY FACTS

1. On April 10, 2019, Defendant terminated Plaintiff's employment. (Complaint, ECF No. 1 at ¶ 10.).

2. In April 2019, Defendant underwent a personnel change in its human resources department. As a result of a clerical oversight during the transition,

Plaintiff was not initially provided a COBRA notice.[2] (Aluia Declaration, Exhibit A at ¶ 7).

3.  Between April 10, 2019 and March 24, 2020, Defendant did not receive any correspondence from Plaintiff (or his counsel) relating to COBRA coverage. (*Id.* at ¶ 8).

4.  On or about March 25, 2020, Plaintiff's counsel (Shamis) sent Defendant a letter indicating that Shamis & Gentile, P.A. represented Plaintiff.  The letter requested a copy of Paul Troia's COBRA notice of right to elect continuation coverage. (Laughren Declaration, Exhibit B, at ¶ 5).

5.  On April 13, 2020, Defendant's legal counsel (Ms. Laughren) spoke with Shamis, by telephone, and requested that he provide her with information on any medical coverage and out-of-pocket medical expenses incurred by Plaintiff and his spouse. Shamis did not provide any information in response.  (*Id.* at ¶ 7).

6.  In a follow-up letter on April 16, 2020, Ms. Laughren again requested information about any outstanding medical expenses and coverage. (*Id.* at ¶ 8).

---

[2] In general, following a "qualifying event" (29 U.S.C. § 1163(2)), such as the termination of a covered employee, the employer must notify the health plan administrator of the termination within 30 days. 29 U.S.C. § 1166(a).  The plan administrator then must notify the covered employee within 14 days of his/her right to continuation coverage. 29 U.S.C. § 1163(c).  The employee then has 60 days from the date of the plan administrator's notice to elect continuation coverage.  29 U.S.C. § 1165.  If the covered employee elect's continuation coverage, he/she is entitled to continuation coverage for 18 months, retroactive to the date of the qualifying event. 29 U.S.C. § 1162(2)(A)(i); 26 C.F.R. § 54.4980B-7.

7.  On April 21, 2020, Ms. Laughren emailed Shamis to follow-up on her request for information about any outstanding medical expenses and coverage. (*Id*. at ¶ 9).

8.  Shamis did not respond to the April 16, 2020 letter or April 21, 2020 email and did not provide the requested information. (*Id*. at ¶ 13).

9.  On April 24, 2020, Defendant's third-party vendor for processing COBRA notices, Administration Resources, Inc. ("ARI"), sent Plaintiff a COBRA notice and election form, with an election expiration date of June 22, 2020.  A complete copy of these materials was also mailed to Shamis.  Both copies were transmitted by U.S. Postal Service certified mail, return receipt requested. In addition, Ms. Laughren emailed a copy of the COBRA notice and election form to Shamis. (Harry Declaration Exhibit C, at ¶ 6; Ex. B at ¶ 10).

10. That notice advised Plaintiff and his counsel that COBRA continuation coverage was still available to Plaintiff and his spouse, retroactively, dating back to the date of Plaintiff's termination. The notice also advised that Plaintiff and his spouse could elect the coverage by completing the "Enrollment Form" and returning it according to the instructions within the form. (Ex. C, at ¶ 6)(*See* Answer, ECF No. 3 at ¶ 21).  In addition, Plaintiff and his legal counsel were provided a Premium Computation Form and were instructed to contact ARI, if they had any questions. (Ex. C, at ¶ 6).

11.  On April 27, 2020, Defendant confirmed the delivery of Plaintiff's COBRA notice to Shamis by the signed certified mail return receipt. (*Id*. at ¶ 7).

12.  On May 1, 2020, Defendant confirmed the delivery of Plaintiff's COBRA notice to Plaintiff by the signed certified mail return receipt. (*Id*. at ¶ 8).

13.  On May 14, 2020, two weeks after Plaintiff received the COBRA notice and before the expiration of his COBRA election period, Plaintiff filed his Complaint (ECF No. 1).

14.  On June 5, 2020, more than two weeks before the expiration of the CORBA election period, Defendant filed its Answer. Defendant's Answer outlined its curative measures and explained that Plaintiff's COBRA election deadline was June 22, 2020, that Plaintiff had received his COBRA notice on May 1, 2020, and that Plaintiff (and Shamis) had been advised that insurance coverage for the period of May 1, 2019 through November 11, 2020 was available to Plaintiff and his spouse. (Answer, ECF No. 3 at ¶22).

15.  Neither Plaintiff, nor his counsel, returned the COBRA election form by the June 22, 2020 deadline. (Ex. A at ¶ 11; Ex. B at ¶ 12; Ex. C at ¶ 9).

16.  On June 23, 2020 — the day after the June 22, 2020 COBRA election deadline — ARI mailed Plaintiff and Shamis, a confirmatory notification that it had not received the COBRA election form from Plaintiff.  (Ex. C at ¶ 10).

5

17.  Neither Defendant nor ARI have received any further contact from Plaintiff (or Shamis) regarding the COBRA election. (Ex. A at ¶ 12; Ex. B at ¶ 13; Ex. C at ¶ 12).

## III.    LEGAL ARGUMENT

### A.    Federal Jurisdiction Under Article III

Article III of the Constitution limits federal-court jurisdiction to adjudication of "Cases" and "Controversies." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 90 (2013). Since Article III's case-or-controversy requirement is jurisdictional, a challenge under Article III must be resolved in Plaintiff's favor before this Court may reach the merits. *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) ("Before we reach the merits, we must assess our jurisdiction."). *See also, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (describing standing as a "threshold requirement imposed by Art. III" that must be considered before the merits).

A motion based on a lack of subject matter jurisdiction can either attack the claim of jurisdiction on its face, or the factual basis for jurisdiction. *Abbott v. Michigan,* 474 F.3d 324, 328 (6th Cir.2007). On a motion disputing the factual basis for jurisdiction (like here), there is no presumption that the plaintiff's allegations are truthful. *Id.*  Rather, the plaintiff bears the burden of establishing jurisdiction. *Id.*

Courts have wide discretion to allow affidavits and documents to resolve any disputes over whether a factual predicate for jurisdiction exists. *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744 (W.D. Mich. 2008); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

This motion presents three related, but independent, challenges under Article III's "case or controversy" requirement: standing, ripeness, and mootness. As shown below, Plaintiff's claims fail each of these three separate challenges.

B.   **Plaintiff Cannot Establish Article III Standing For His Alleged Injuries**

The central premise of the instant motion is that the complained-of conduct – Defendant's failure to issue Plaintiff a timely COBRA notice at the time of his termination in April 2019 – did not cause Plaintiff any injury. The evidence establishes that Defendant, upon learning of its error in April 2020, immediately endeavored to put Plaintiff in the very position he would have occupied but-for the error. More specifically, Defendant gave Plaintiff (and his counsel) a detailed COBRA notice, as well as an extended opportunity to elect COBRA coverage, which remained open until June 22, 2020. That election opportunity, if accepted by Plaintiff, would have eliminated any loss of coverage, and any other harm. Instead

7

of taking that opportunity, Plaintiff filed his Complaint before his COBRA election period had even expired.

### 1. Threshold Elements For Standing Under Article III

To satisfy Article III's standing threshold, a plaintiff must show (a) an injury in fact—that is, a "concrete and particularized" invasion of a legally protected interest that is "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the conduct complained of — that is, the injury must be "fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party;" and (c) that the harm is redressable by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).[3]

In *Spokeo,* the Supreme Court directly addressed the "concrete and particularized" prong as applied to "informational" injuries, like those alleged here. In *Spokeo*, plaintiff asserted claims under the Fair Credit Reporting Act ("FCRA"), predicated on an alleged "informational" injury consisting of a failure to provide plaintiff with certain information. *Spokeo,* 136 S. Ct. at 1546. In rejecting plaintiff's bid to establish "informational" standing (which, as here, included a claim for

---

[3] Importantly, "[a] plaintiff must maintain standing throughout all stages of the litigation." *City Communications, Inc. v. Detroit*, 888 F.2d 1081, 1086 (6th Cir. 1989).

statutory penalties), the *Spokeo* Court held that "[i]njury in fact is a constitutional requirement…. Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 1547-48 (internal punctuation omitted). Further, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549. A plaintiff cannot "for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury in-fact requirement of Article III." *Id*. The Supreme Court ultimately held that the plaintiff had not established the "concrete" prong required for Article III standing. *Id*. at 1550.[4]

This year, the Supreme Court extended the standing principles from *Spokeo* to ERISA claims. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). The Court emphasized that redressability is a critical component of the standing analysis. *Id.* at 1619 ("[i]f Thole and Smith were to win this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny

---

[4] Thereafter the Sixth Circuit has enthusiastically embraced *Spokeo*. *See Nagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018); *Huff v. Telecheck Servs.,* 923 F.3d 458 (6th Cir. 2019); and *Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020).

more.").  Because the Court's ruling on the merits would not change plaintiffs' position, it affirmed the Court of Appeal's dismissal and concluded that plaintiffs "have no concrete stake in this lawsuit." *Id*.

### 2.      Plaintiff Cannot Establish Article III Standing for His Informational Injury or Loss of Coverage Claims

Plaintiff's Complaint alleges two theories of "injury" for standing purposes. Plaintiff first alleges an "informational injury" in support of his claim for damages. (Complaint ECF No. 1, at ¶ 20).  Plaintiff does not allege any tangible injury in support of the "informational injury" claim.    Second is a vague and conclusory allegation regarding "Loss of Insurance Coverage." (Complaint ECF No. 1, at ¶21) Specifically, Plaintiff alleges that he "suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills[.]" (*Id*.).[5]  Given the circumstances of this case, Plaintiff's bare allegation does not (and cannot) establish standing, as explained in more detail below.

---

[5] On its own, this allegation is insufficient under FED R. CIV. P. 8's pleading standard to establish Article III standing. "Though decidedly liberal, this standard does require more than bare assertions of legal conclusions." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (citing, *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001)). Plaintiff's obligation to provide the "grounds" of his entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

Here, the Supreme Court's opinions in *Thole* and *Spokeo* dictate that an "informational injury" alone, without any concrete injury, is insufficient to establish Article III standing.  Also, Plaintiff's (alleged) "loss of coverage" injury, while still inchoate, was eliminated by Defendant's curative measures – specifically, the opportunity to elect COBRA coverage retroactive to Plaintiff's termination.  Put simply, Plaintiff's decision not to elect continuation coverage – not any failure on Defendant's part – is now the direct, proximate cause of any (alleged) loss of coverage.  This is true for Plaintiff's prospective coverage, and for any alleged "gap" in coverage Plaintiff may have experienced, since COBRA coverage (had Plaintiff elected it) is retroactively applied to the date of the qualifying event (here, Plaintiff's termination).  *See* 26 U.S.C. § 1162(2).  After Plaintiff (and his counsel) received the COBRA notice, and a renewed chance to elect COBRA coverage, there was no legitimate reason to file the Complaint.  All that remains of Plaintiff's lawsuit are claims for attorney fees or statutory penalties, which have long been held insufficient, without more, to confer Article III standing.  *See, e.g., Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

a)      Plaintiff Cannot Show A Concrete and Particularized Injury

Plaintiff cannot establish Article III standing based on his alleged informational-injury and loss of coverage claims because he has not suffered a

11

concrete and particularized injury-in-fact.  *Spokeo* makes clear that an "informational" injury alone or a bare statutory violation, absent any concrete and particularized harm, cannot establish Article III Standing.  *Spokeo,* 136 S. Ct. at 1549.   At most, Plaintiff alleged a one-off clerical error which was remedied by Defendant's subsequent action.  Indeed, relevant provisions of the Internal Revenue Code specifically contemplate situations where, as here, a plan administrator fails to issue a timely COBRA notice.  *See* 26 U.S.C. § 4980B(g)(4).   Specifically, a failure to comply with COBRA's notice requirements is treated as corrected by the Internal Revenue Service if the failure is retroactively undone "to the extent possible," and the beneficiary is placed "in a financial position which is as good as such beneficiary would have been in had such failure not occurred."  *Id*.   This is *precisely* the course of action Defendant promptly undertook upon learning that Plaintiff had not received a COBRA notice.   As a result, Plaintiff's informational and loss of coverage "injuries" were cured.   Thus, there remains no concrete and particularized injury sufficient to establish Article III standing. *See Spokeo,* 136 S. Ct. at 1549.   Here, Plaintiff cannot establish an actual "concrete and particularized" harm and thus his Complaint should be dismissed.

12

b)     Plaintiff Cannot Show A Causal Connection Between the Alleged Technical Violation and His Alleged Injuries

In addition, Plaintiff cannot establish Article III standing because his rejection of COBRA benefits represents the sole causative predicate of any (alleged) harm. Plaintiff (along with his counsel) received notice of his COBRA rights and was given a chance to elect coverage retroactive to his termination. (Ex. C at ¶ 6; Answer, ECF No. 3 at ¶ 21).  Plaintiff declined.  Plaintiff's rejection of the COBRA benefits and retroactive reimbursement severed any causal connection between the complained-of conduct and the alleged injury.[6]  Accordingly, because Article III standing cannot be maintained without a causal connection, Plaintiff's Complaint should be dismissed.

c)     There is No Legal Redressability For Plaintiff's Alleged Injury

The Supreme Court in *Thole* recently reiterated that a plaintiff cannot establish Article III standing if the court's ruling, favorable or unfavorable, would not impact a plaintiff's interests in a concrete way.  *Thole*, 140 S. Ct. at 1622.  In this case, after Plaintiff allowed the COBRA election period to expire, he was no longer entitled to

---

[6] *See, e.g., 431 E. Historic Saint Andrew's Hall, Inc. v. Saint Andrew's Soc'y*, 1989 U.S. Dist. LEXIS 17831, at *8 (E.D. Mich. May 1, 1989) (Friedman, B.) (dismissing claims where plaintiffs failed to show their injury was fairly traceable to, and caused by, defendants' alleged misconduct).  Unpublished cases are attached alphabetically as Exhibit D.

13

COBRA coverage or retroactive reimbursement.[7]  Accordingly, because Plaintiff is no longer entitled to COBRA coverage and his failure to elect coverage nullified any claims for past damages,[8] there remains no legal redress this Court can grant to cure any COBRA-related "concrete" injury. As in *Thole*, Plaintiff's Complaint should be dismissed.

C.  **Plaintiff's Claims Were Not Ripe and Are Now Moot**

While a standing challenge raises the question of who can invoke federal-court review, ripeness and mootness challenges address the question of when someone may invoke such review.  *Associated Gen. Contrs. Of Am. v. City of Columbus,* 147 F. Supp. 2d 864, 868-870 (S.D. Ohio 2001).  A ripeness inquiry requires plaintiff to show that his "injury in fact be certainly impending." *Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377 (6th Cir. 2001)(internal quotation marks omitted); *City Communications, Inc.*, 888 F.2d at 1989 ("Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all").  Plaintiff cannot establish that his claims

---

[7] *See Lincoln General Hosp. v. Nebraska State Educ. Ass'n Health Care Program Plan*, 792 F. Supp. 67 (D. Neb. 1991); *See also Deckard*, 704 F.3d at 538 (finding no damages when COBRA benefits where retroactively applied).

[8] *See also Ballard v. Vulcan Materials Co., 978 F. Supp. 751*, 759 (W.D. Tenn. 1997) ("This rule rests on the fact that when a plaintiff decides not to continue coverage, there are no damages for which defendant can be liable. . . . By deciding not to continue coverage, however, plaintiff negated any liability, under COBRA, on the part of defendant for those medical expenses.").

were ripe when he filed his Complaint.  Specifically, after receiving the April 2020

COBRA Notice and a new opportunity to obtain COBRA coverage,  Plaintiff's

alleged injuries were hypothetical, insofar as he could have avoided or eliminated

the alleged injuries by electing the continuation coverage.  Instead, Plaintiff filed his

Complaint before his COBRA election period had expired.  Accordingly, Plaintiff's

claims were not ripe for adjudication at the time his Complaint was filed.

Plaintiff's claims are also now moot.  As courts have long held, "[i]f an

intervening circumstance deprives the plaintiff of a 'personal stake in the outcome

of the lawsuit,' at any point during litigation, the action can no longer proceed and

must be dismissed as moot." *Genesis HealthCare Corp. v. Symcryk,* 569 U.S. 66, 71

(2013).[9]  As explained above, Plaintiff had until June 22, 2020 –  approximately

three weeks after filing suit – to elect COBRA continuation coverage.  Inexplicably,

and despite incontrovertible proof that Plaintiff and his counsel had received notice

---

[9] *See also Ballard*, 978 F. Supp. at 759 ("[H]ad plaintiff elected to continue coverage under COBRA, that coverage would have related back to [the qualifying event], and plaintiff would have been covered for his medical expenses during that period. By deciding not to continue coverage, however, plaintiff negated any liability, under COBRA, on the part of defendant for those medical expenses."); *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004) (federal courts "do not have jurisdiction over cases in which due to the passage of time or a change in circumstances, the issues presented . . . will no longer be live or the parties will no longer have a legally cognizable interest in the outcome of the litigation."); *Mercado-Garcia v. Ponce Federal Bank*, 779 F. Supp. 620, 631 (D.P.R. 1991) (holding that a plaintiff's decision not to continue coverage under COBRA precluded claims for violation of the notice provisions, regardless of the date the beneficiary received his COBRA notice), *aff'd,* 979 F.2d 890 (1st Cir. 1992).

of the corrective opportunity to elect COBRA coverage and retroactive medical expenses reimbursement, Plaintiff declined the coverage. This, in turn, rendered Plaintiff's claims moot for the reason that after the expiration of the election period, Plaintiff is no longer able to invoke his statutory entitlement to coverage (prospective or retroactive) under COBRA. Thus, because Plaintiff was not entitled to COBRA benefits after June 22, 2020, his claims are moot.[10]

## IV.   CONCLUSION

This is a case that never should have been filed. The COBRA notice provisions are not intended to establish a game of "gotcha," whereby enterprising lawyers are empowered to manufacture class-action litigation – or, more accurately, class-action settlements including attorneys' fees – based on errors that are adequately addressed in good faith by well-intentioned defendants. Yet, this characterization fairly describes the case presently before this Court. When Plaintiff's counsel alerted Defendant to the error, Defendant did what any

---

[10] *Cf. Holford v. Exhibit Design Consultants*, 218 F. Supp. 2d 901 (W.D. Mich. Sept. 9, 2002)("Should Plaintiff decline the offer of payment of retroactive medical expenses, the decision would constitute a failure to mitigate damages which would make her ineligible to recover the medical expenses as actual damages."); *Hanysh v. Buckeye Extrusion Dies, Inc.*, 2012 U.S. Dist. LEXIS 125628 (N.D. Ohio Sept. 5, 2012) (stating that a plaintiff in a COBRA notice case has a duty to mitigate damages). Although these cases are couched in duty-to-mitigate terms, their logic suggests a controlling principle for this case – namely, Plaintiff's choice not to elect COBRA coverage was a superseding cause of any alleged harm, and rendered moot the claims Plaintiff now tries to assert.

16

responsible plan sponsor would do:  it corrected the error in the precise way contemplated by the applicable statute.  That curative effort provided Plaintiff with an opportunity to elect COBRA continuation coverage, which guaranteed future coverage for Plaintiff and promised to eliminate any gaps in medical coverage and medical expenses, going back to Plaintiff's termination.

In the words of the relevant statute (26 U.S.C. § 4980B(g)(4)), Defendant's actions placed Plaintiff "in a financial position which is as good as [Plaintiff] would have been in had such failure not occurred."   The effect of that action was to make Plaintiff whole, if only *Plaintiff* would have permitted it.  Instead, Plaintiff (or his lawyer) thought the better course of action was to launch class-action litigation. Plaintiff's choice serves no valid purpose, and in fact, tends to harm the very class of participants this suit seeks to protect, in the form of greater plan-administrative costs, which eventually diminish coverages and increases premiums.

Simply, Plaintiff lacks standing to assert his claims.  Moreover, his claims were not ripe for adjudication when filed, then became moot when Plaintiff chose not to elect COBRA coverage by the June 22, 2020 deadline.  This Court should not countenance such pointless, and counter-productive, resort to litigation. Accordingly, the Complaint should be dismissed with prejudice.

Since this motion should have been unnecessary, Defendant also respectfully

seeks an award of attorneys' fees under 29 U.S.C. §1132(g), or alternatively, under

28 U.S.C. §1927.

Respectfully submitted,
JACKSON LEWIS P.C.

*/s/ Blaine A. Veldhuis*
Blaine A. Veldhuis (P78840)
2000 Town Center, Suite 1650
Southfield, MI 48075
(248) 963-1900
Dated:  August 17, 2020          Blaine.Veldhuis@Jacksonlewis.com


Charles F. Seemann III (LA - #23933)
Attorneys for Defendant
650 Poydras Street, Suite 1900
New Orleans, LA 70130
(504) 208-1755
Charles.Seemann@jacksonlewis.com

## CERTIFICATE OF SERVICE

On this day August 17, 2020, the undersigned did cause to be filed the foregoing document with the Court using the CM/ECF system, which will send notice of its filing to all counsel of record.

*/s/ Blaine A. Veldhuis*
Blaine A. Veldhuis (P78840)

18